## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## SOUTHERN DIVISION
## PIKEVILLE

JEFF HUANG,                          )
                                     )
        Plaintiff,                   )
                                     )         No. 7:18-CV-11-REW
v.                                   )
                                     )         OPINION & ORDER
PRESBYTERIAN CHURCH (U.S.A.), A      )
CORPORATION, et al.,                 )
                                     )
        Defendants.                  )

                        *** *** *** ***

Plaintiff Jeff Huang, a former student at the University of Pikeville's Kentucky College of Osteopathic Medicine (KYCOM), brings a host of claims, under numerous theories, against a corporate arm of the Presbyterian Church,[1] his former school (the University of Pikeville), and various past and present University personnel.[2] DE 6 (Amended Complaint).[3] The suit stems from Plaintiff's ill-fated tenure as a med-student, his eventual withdrawal from the school, and the aftermath. As to the Complaint's[4] thirteen pleaded Counts, most are time-barred, several rely on statutes that are not enforceable through a private cause of action, and another is inadequately pleaded. Further, Plaintiff states no claim, of any kind, against the Church Defendant.

---

[1] Namely, the Presbyterian Church (U.S.A.), A Corporation, hereinafter the "Church Defendant." DE 6 at ¶ 4.

[2] Specifically, Linda Dunatov, Gerald Laurich, Boyd R. Buser, James Hurley, Burton Webb, and Paul R. Patton. DE 6 at 1. Along with the Defendant institution, collectively the "University Defendants."

[3] Plaintiff also names an unidentified number of "Unknown Defendants," hereinafter "Doe Defendants." DE 6 at ¶ 12.

[4] The Court, for brevity's sake, refers to the operative DE 6 Amended Complaint as simply the "Complaint."

Accordingly, and for the reasons fully explained below, the Court wholly dismisses eleven Counts and all claims against the Church Defendant.

## I.  BACKGROUND

Plaintiff alleges violations of 42 U.S.C. §§ 1983 & 1985 (Counts I, II, & XII), federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343 (Counts III & IV), RICO's conspiracy prohibition, 18 U.S.C. § 1962(d) (Count V), the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g (Count VII), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count X). Huang also asserts multiple Kentucky-law claims, including: common-law privacy invasion (Count VI), a KRS 164.283 violation (Count IX), breach of contract (Count XI), violations of Article II & III of the Commonwealth's constitution (Count XII), and an untethered Count for punitive damages (Count XIII).

### A.  Facts

Huang bases his claims on the following allegations:[5]

--    In September 2011, Defendant Dunatov (then-Dean of the med school) told another student that Huang was struggling academically, had inadequate grades, and failed to attend a learning skills workshop.

--    Sometime in 2012, Defendant Laurich (then-faculty at the med-school) falsely claimed Plaintiff was asleep in class. When Plaintiff denied the claim, Laurich replied, "Well, your eyes were significantly shut." Plaintiff and, in Huang's view, other students

---

[5] Under the relevant standard, the Court assesses (and, here, recites) the facts in favor of and as alleged by Plaintiff. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The factual summary is from the Amended Complaint, the operative pleading, unless otherwise noted. DE 6 at ¶¶ 14–58.

perceived Laurich's response as intending an aspersion on Plaintiff's East Asian ethnicity.

--    In (approximately) 2013, the University established a "Student Ethics Council" (the SEC) to which it conferred authority over functions previously reserved to University personnel. On October 22, 2013, the SEC president wrote Plaintiff a warning that directed him to enter the classroom using the back entrance if he arrived late for class. The SEC purportedly allowed four Caucasian class members late entry through the front entrance with no adverse consequences.

--    On November 21, 2013, Plaintiff posted a warning about potential campus gang activity on Facebook and stated: "You can guess at their demographic." On November 25, 2013, the SEC—misquoting Plaintiff as stating "I bet you can guess their demographics"—charged Huang with making a racially-centered, derogatory, and unprofessional comment unbecoming a future doctor. Defendant Dunatov denied Plaintiff's appeal and equated the violation to a prior student's posting of a female patient's genitalia on Facebook.

--    In May 2014, Plaintiff (without reasonable notice or opportunity to prepare) failed a mandatory remedial Internal Medicine exam, purportedly based on eighty PowerPoint packets and a 6,400-page textbook. Approximately 20% of the exam addressed electrocardiograms—a topic covered in only one PowerPoint packet. The remedial exam did not coincide with the regular semester's instruction content. Based on Plaintiff's failed examination, Defendant Soletz (then-Dean of Promotions and Matriculation) recommended Huang's dismissal from the med school. Defendant Buser (then-Dean of the med school) upheld Soletz's decision on appeal and advised Huang that KYCOM

would dismiss him unless he voluntarily withdrew. *See* DE 6-5 (Pl's Ex. E – Buser's July 25, 2014, letter to Huang). Dean Buser also explained that he would not give Plaintiff a favorable recommendation to any other med school.

--      On a July 25, 2014, phone call, Defendant Buser advised Plaintiff that he had previously assisted a Caucasian student, who failed courses for three straight years at the University's med school, to enroll at another school. Buser claimed that he would not offer Huang similar aid.

--      On August 26, 2014, Plaintiff took the Comprehensive Osteopathic Medical Licensing Examination (COMLEX) level-one exam. *See* DE 6-7 (Pl's Ex. G). However, COMLEX invalidated Plaintiff's minimal passing score after the Defendant University notified the administering board of Plaintiff's withdrawal. The University permitted one of Huang's Caucasian, but otherwise similarly situated, classmates to take the COMLEX exam four times. The classmate has since graduated from the University's med school.

--      When Plaintiff completed his second year of med school, KYCOM considered Huang and seven of his classmates marginal academically. The University allowed the six Caucasian students in this cadre immediately to repeat their second-year classes; the University notified the other two academically marginal students, Plaintiff and another Taiwanese student, that they would not receive the same opportunity.

--      Beginning in 2012, Plaintiff retained counsel and attempted to resolve his dispute with the University. On July 19, 2012, the University's then-counsel invited Plaintiff's counsel to discuss the issues. A September 14, 2016, letter from the University Defendants' current counsel to Kentucky's Council on Post-Secondary Education

(CPE)—responding to Plaintiff's complaint, *see* DE 16-2—stated the University's denial of forcible withdrawal and discrimination.[6]

### B. Posture

The Church and University Defendants, separately, pursue dismissal. DE 8 & 10 (Motions). The motions stand fully briefed and ripe for review. DE 12 & 13 (Responses); DE 14 & 16 (Replies); *see also* DE 11 (University Defendants approving Church Defendant's DE 8 effort). The Church Defendant principally pursues dismissal on the following basis: "Huang's Amended Complaint simply contains no substantive factual allegation concerning the A Corporation that even remotely suggests [it] is liable to Huang for the harms he alleges." DE 8-1 at 3. The University Defendants argue for dismissal under a variety of theories including statutes of limitations, absence of a private cause of action, and simple inadequate pleading. *See generally* DE 10. Ultimately, the Court finds the motions well-founded, Plaintiff's responses unavailing, and dismissal of the targeted claims warranted.

### C. Dismissal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[6] Plaintiff references and quotes from the letter in his Complaint. Accordingly, the Court may (and does) consider the full document "without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so."), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992 (2002). Because the letter was "incorporated by reference and quoted extensively, [it] [is] central to the [Plaintiff's] claims. Moreover, neither party contests the appropriateness of [its] consideration on review of [Defendants] motion[s] to dismiss." *In re Fair Fin. Co.*, 834 F.3d 651, 656 (6th Cir. 2016), *reh'g denied* (Sept. 23, 2016).

*v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct.

1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's

elements will not do[.]" *Twombly*, 127 S. Ct. at 1965. Courts "must construe the

complaint in the light most favorable to the plaintiff and accept all allegations as true."

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept

"legal conclusion[s] couched as [ ] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct.

2932, 2944 (1986).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal*[7] require a plaintiff to

"plead facts sufficient to show that her claim has substantive plausibility." *Johnson v.

City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and

---

[7] Plaintiff suggests that the *Conley v. Gibson,* 78 S. Ct. 99 (1957), "notice pleading" standard, in-part, survived *Twombly* and *Iqbal,* and that the "plausibility" bar for claims at the dismissal stage does not apply to eleven of his Counts. DE 12, at 4–5. The Court disagrees. Sixth Circuit precedent forecloses Plaintiff's theory:

> The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson . . .* that had prevailed for the last few decades. [*Iqbal*; *Twombly*.] *Conley* itself had reflected the change away from "code pleading" to "notice pleading," and the standard it announced was designed to screen out only those cases that patently had no theoretical hope of success.
> . . .
> The Court has now explained, however, that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Indeed, while this new *Iqbal/Twombly* standard screens out the "little green men" cases just as *Conley* did, it is designed to also screen out cases that, while not utterly impossible, are "implausible."

*Courie v. Alcoa Wheel & Forged Prod.*, 577 F.3d 625, 629–30 (6th Cir. 2009) (footnote omitted). *Twombly & Iqbal* elevated pleading requirements and modified the Rule 12(b)(6) standard. Plaintiff's attempt to limit those cases to their specific facts is untenable.

directly events that . . . entitle[ ] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner*, 108 F.3d. at 88. However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). While a statute of limitations defense often is not appropriate for consideration as part of a 12(b)(6) motion, such defense may prevail "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55 (6th Cir. 2012) ("A motion to dismiss can be premised on an affirmative defense . . . if 'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" (internal citation omitted)).

## II.   THE PRESBYTERIAN CHURCH

At the dismissal stage, the Court accepts as true that the Church Defendant is in some way "affiliated" with the Defendant University. Defendant's motion-stated contrary factual claims are, thus, irrelevant to the Court's 12(b)(6) analysis.[8] On the other hand,

---

[8] The Court, consistent with Rule 12(d), does not consider the parties' extra-pleading factual contentions and attachments regarding affiliation, for purposes of this motion. *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10–CV–751, 2011 WL 1118669, at *2 (W.D.

the "affiliation" contention is the *only* material factual allegation Plaintiff directs to the Church Defendant. [Indeed, Plaintiff does not individually depict the Church as a party. *See* DE 6 at ¶¶ 5–13.] Huang's bare claim of "affiliation" states no plausible entitlement to relief, under any pleaded theory, against the Church Defendant. Thus, the Court dismisses the Plaintiff's claims as to that entity under Rule 12(b)(6).

Plaintiff contends that "in many instances the terms 'affiliate' and 'affiliated' describe a corporate connection that is legally cognizable[.]" DE 13 at 7. True enough, as a general proposition. However, Huang's definitional theory ultimately offers him no aid. Plaintiff's argument, at most, establishes the *possibility* that circumstances could theoretically confer meaning on the term "affiliated" to make a legally significant connection. Yet, Huang entirely fails to connect that bare prospect to the reality of his Complaint, *i.e.*, he does not explain how the pleaded "affiliation" allegation supports or implies an actionable claim against the Church Defendant. *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *7 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) ("[T]he mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief, and pleading facts that are merely consistent with liability is not enough.").

Undoubtedly, the University could be "affiliated" (under one of the many available interpretations of that amorphous term) with a great many organizations. But all such "affiliates" are not, merely by associating with the Defendant in any recognizable form, subject to vicarious liability for alleged University wrongs. Vicarious liability is a

Mich. March 25, 2011) (citation omitted) ("A district court's decision to exclude such materials should be explicit.").

defined legal doctrine applicable only under specific circumstances, none of which are, here, pleaded. [For instance, the Complaint alleges no plausible basis for an agency finding under any recognized theory. *See, e.g.*, Restatement (Third) Agency § 1.01 (2006) (defining "Agency"); *id.* at § 2.03 ("Apparent Authority"); *id.* at § 4.01 (defining "Ratification").] Stated otherwise, Plaintiff identifies no mechanism for holding the Church Defendant, affiliated or not, liable for any other Defendant's purported misdeeds.

To survive dismissal, a complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (internal quotation marks omitted). Plaintiff's factual allegations needed to "do more than create speculation or suspicion of a legally cognizable cause of action; they [needed to] show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1965) (emphasis in original). Again, the Complaint mentions no agency or vicarious liability theory, and alleges no direct Church involvement.[9] In short, Plaintiff entirely failed to state any claim against the Church Defendant.

A company could be affiliated by ownership, governance, control, contract, or by custom or operation of law. Some affiliations could implicate agency; most certainly

---

[9] Even Plaintiff's response does not explain how, in this case, vicarious liability could apply to the Church Defendant. *See* DE 13, at 9 ("Plaintiff submits that . . . his allegations that the Church and the Defendant University are 'affiliated' more than suffice to raise a 'reasonable inference' that the Defendant University is, or might be, vicariously liable to the Plaintiff."); *cf. Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) ("It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." (internal citations and quotation marks are omitted)). Plaintiff, at most, identifies the contours of a vicarious liability theory that he did not actually plead. DE 13, at 8.

would not. The Court can plausibly glean nothing from the naked alleged affiliation, which has no independent, determinative meaning in the context of imputed or vicarious liability.[10]

## III.  THE UNIVERSITY DEFENDANTS

### A.  Statutes of Limitations

Seven of Plaintiff's claims are facially untimely. Neither collateral estoppel nor the continuing violation doctrine save the tardy claims. Accordingly, the Court dismisses Counts I, II, VI, VIII, IX, X, and XII.[11]

---

[10] *See, e.g., United States v. Am. Mercantile Corp.*, 889 F. Supp. 2d 1058, 1071 (W.D. Tenn. 2012) ("The Supreme Court has remarked that 'it is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.'" (quoting *United States v. Bestfoods*, 118 S. Ct. 1876, 1884 (1998))); *id.* at 1071 n.22 (citing additional authority).

[11] The Court is cognizant of the Sixth Circuit's general reluctance "to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013). However, the Court finds that the Complaint presents the rare case in which "the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 599 (6th Cir. 2012), *overruled on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). "Here, [Huang]'s complaint [ci]ted [a statute of limitations] and preemptively alleged [facts relevant only to his arguments] to defeat [the time bar]." *Marsh*, 693 F.3d at 555; *see* DE 6, at ¶ 17, 56–58. The 2017 pleading alleges 2011 events, DE 6 at ¶ 15, two paragraphs before identifying a limitations period that would, if not effectively anticipated, justify dismissal. The Court infers, from Plaintiff's inclusion of an obviously self-defeating allegation, intentional anticipation. Plaintiff's incorporation, in Complaint allegations, of events that principally serve as grounds for his response to a limitations defense, *see* DE 6 at ¶¶ 56–58, cinches the finding.

A plaintiff alleging clearly untimely claims may sometimes rely on the limited 12(b)(6) review standard to overcome the dismissal hurdle. *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017) ("[A]n affirmative defense to a plaintiff's claim for relief, [is] not something the plaintiff must anticipate and negate in her pleading."). Here, however, Plaintiff intentionally teed up the expected defense, included an anticipatory response, and declined to argue against the Court's resolution of the numerous limitations defenses Defendants assert at this preliminary stage. That is, Huang, effectively, submitted the statute of limitations defense, and his response, for the Court's

The parties do not dispute the applicable limitations periods. For § 1983 and Title VI claims, federal courts borrow forum states' personal injury statutes of limitation. *See Wilson v. Garcia*, 105 S. Ct. 1938, 1949 (1985) (Section 1983); *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996) ("Indeed, all of the circuits deciding the [limitations period for Title VI claims] have uniformly applied the state personal injury limitations period." (internal citations omitted)). Here, the relevant statute surely is the one-year limitation period provided by KRS 413.140. *Ham v. Marshall Cty., Ky.*, No. 5:11-CV-11, 2012 WL 5930148, at *3 (W.D. Ky. Nov. 27, 2012) (citing *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)) (Section 1983); *Smith v. Spalding Univ.*, No. 3:15-CV-00595-GNS, 2016 WL 3748522, at *2 (W.D. Ky. July 8, 2016) (Title VI). Kentucky law required Plaintiff to "commence[ ]" his (Count I, Count X & Count XII[12]) civil rights claims "within one (1) year after the cause[s] of action

---

consideration within the 12(b)(6) plausibility rubric. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits. . . . If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief." (internal citations and quotation marks omitted)). Ultimately, because Plaintiff "anticipated the defense . . . in a way that shows that [his] response to the defense lacks merit[,]" the Court assesses and (ultimately) dismisses the untimely claims. *Marsh*, 693 F.3d at 555.

[12] Plaintiff, in response, suggests that his Fourteenth Amendment claim was, at least in part, meant as a *Bivens* claim. DE 12 at 17. *Bivens*, however, provides only a cause of action against <u>federal</u> officials for alleged <u>Fourth Amendment</u> violations; a class of parties and a provision not involved in this matter. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (In *Bivens*, "[t]he Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures."). To the extent Plaintiff suggests that the Court may apply *Bivens* expansively, to include the alleged Fourteenth Amendment violation, he is mistaken. *See id.* at 1857 ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity. *Iqbal*, 556 U.S., at 675, 129 S. Ct. 1937. This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of

accrued[.]" KRS 413.140(1)(a) & (c). A one-year limit also applies to Plaintiff's § 1985 claim (Count II):

> KRS 413.120(1) imposes a one-year statute of limitations for personal injury suits in Kentucky. For a 42 U.S.C. § 1985 action, a court "must look to the most analogous statute of limitations of the state in which the cause of action arose." *Bedford* [*v. Univ. of Louisville Sch. of Med.*, 887 F.2d 1086, 1086] (6th Cir.1989). Kentucky's one-year statute of limitations for conspiracies, KRS 413.140(1)(c), applies to 42 U.S.C. § 1985 actions because it is most analogous to the § 1985 actions. *Id.*

*Eubank v. Collins*, No. CIV.A. 11-326-C, 2012 WL 245234, at *1 (W.D. Ky. Jan. 26, 2012).

Defendants assumed, and Plaintiff did not dispute, that the common-law privacy breach (Count VI) claim triggers by Kentucky's catch-all 5-year statute of limitations. DE 10 at 13; *see* KRS 413.120(b) (requiring commencement within five years for "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated"). The Court, for now, accepts the parties' operating assumption.[13] The IIED

---

defendants.'" (quoting *Correctional Services Corp. v. Malesko*, 122 S. Ct. 515, 520 (2001)).

[13] In *Branham v. Micro Computer Analysts*, the Sixth Circuit applied Kentucky's one-year statute for libel and slander claims to an invasion of privacy claim. 350 F. App'x 35, 38 (6th Cir. 2009). The *Branham* Court explained:

> [T]he rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed. . . . Kentucky also observes the related rule that a specific statute of limitations covers all actions whose real purpose is to recover for the injury addressed by it in preference to the general statute of limitations.
> . . . .
> [T]he Branhams' claim for the invasion of privacy "springs" from the same act underlying their claims for libel and slander[.]

*Id.* at 37–38 (internal citations and quotation marks omitted). However, the Court finds *Branham* distinguishable. In 1981, the Commonwealth's high court officially adopted the

(Count VIII) and KRS 164.283 claims (Count IX)[14] also carry 5-year limitations periods. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) ("There is a right to be free of emotional distress arising from conduct by another. Because the essence of the tort is the interference with this right and not whether any bodily harm results, the five-year statute of limitations applies."); KRS 413.120(2) (requiring commencement within five years for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability.").

      1. Counts I, II, X, and XII

Plaintiff's civil-rights based (42 U.S.C. §§ 1983, 1985, 2000d) claims facially fail as time barred by the applicable one-year statutes of limitations. The alleged factual bases

---

Restatement (Second) of Torts' privacy-tort principles. *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981). The *McCall* Court further stated that "[a]n action for defamation and an action for invasion of privacy (false light) are closely allied." *Id.* at 888–89. Thus, *McCall* supports *Branham*'s application of the one-year limit for "false light" tort claims.

However, the "real purpose" of the unreasonable publicity theory (which the Court views as the instant privacy claim's basis) within Kentucky's privacy tort suite, unlike the "false light" publicity formulation, is not necessarily recovery for "the injury addressed by" suits for libel or slander. *Branham*, 350 F. App'x at 37. Thus, *Branham* does not mandate application of Kentucky's one-year period for defamation claims here. Given the parties' failure to pursue application of an alternative limitation, the Court applies KRS 413.120(b).

[14] KRS 164.283(2) is a criminal statute that mandates confidentiality of academic records. *See also* KRS 164.991 ("Any person who deliberately violates the provisions of KRS 164.283, upon conviction, shall be punished by a fine of not less than twenty-five dollars ($25), nor more than one hundred dollars ($100), and/or imprisonment in the county jail for up to thirty (30) days."). However, Kentucky authorizes civil actions under such a law: any "person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070.

for Counts I, II, X, and XII occurred prior to September 14, 2016.[15] Thus, Plaintiff's September 14, 2017, Complaint came too late.

### 2. Counts VI, VIII, and IX

Huang's state-law privacy (common law and KRS 164.283) and outrage claims are also untimely under the applicable five-year limitations periods. All three claims rely on Defendant Dunatov's alleged release of Plaintiff's academic information to a third-party student in September 2011. Plaintiff's suit—filed approximately six years after Defendant's cited disclosures—clearly came after expiration of the relevant statutory periods.

### 3. Tolling Theories

Contrary to Plaintiff's contentions, neither equitable estoppel nor the doctrine of continuing violations spares the untimely claims. Huang does not challenge Defendant's assertions regarding the timeline for the underlying factual allegations. Rather, Plaintiff pursues tolling under continuing violations and equitable estoppel theories. Because Huang fails to present any valid tolling basis the Court dismisses I, II, VI, VIII, IX, X, and XII, as untimely.

### a. Continuing Violations

Plaintiff's continuing violations theory principally relies on three Complaint paragraphs, which the Court, for the sake of clarity, fully reproduces here:

> 56. Beginning in 2012, Plaintiff retained his present legal counsel, and attempted to resolve his dispute with the University.

---

[15] Indeed, the latest Plaintiff-reported event—excepting the University's response to the CPE complaint, discussed below—was a July 25, 2014, conversation between Plaintiff and Defendant Buser. DE 6, at ¶ 53.

57. In a letter Plaintiff's counsel dated July 19, 2012, the University's then counsel, Daniel H. Combs invited Plaintiff's counsel to "contact this office" so that the respective counsel might "further discuss the matter."

58. After four years of such discussions, the University's then counsel, Josh Salisbury, in a letter dated September 14, 2016, advised Plaintiff's counsel that the University's position was that "the University did not force Mr. Huang to withdraw from the KYCOM program or discriminate against him" and that "[t]he university of Pikeville requests that this Complaint be disposed of following review of this Response and the attached documentation." The letter further stated: "Nothing about the information or arguments presented above should be construed as a waiver or any defense or argument to which the University may be entitled."

DE 6 at ¶¶ 56–58. Plaintiff argues, and the Court accepts as true at this stage, that the four-years of discussions included ultimately unsuccessful resolution efforts. However, the Court cannot plausibly construe the allegations as averring a continuing violation, of any kind, that would justify tolling.

The continuing violations doctrine permits tolling of the limitations period under three conditions:

First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern[.] . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). The "Sixth Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014) ("Courts have been 'extremely reluctant' to extend the continuing-violation doctrine beyond the context of Title VII[.]" (internal citations omitted)). However, "[a] plaintiff can establish a continuing violation if he or she shows a longstanding and

demonstrable policy of discrimination." *Katz v. Vill. of Beverly Hills*, 677 F. App'x 232, 236 (6th Cir. 2017) (internal citations and quotation marks omitted). In the circumstances, Plaintiff essentially needed to allege that "some form of intentional discrimination against the class of which plaintiff was a member was the . . . standing operating procedure." *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 693 (6th Cir. 2017) (internal citations and quotation marks omitted).[16]

Additionally, because a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation[,]" *Tolbert*, 172 F.3d at 940 (internal citations omitted), Huang needed to allege "an act contributing to the claim occur[ing] within the filing period[.]" *Taylor*, 452 F. App'x at 619 (quoting *Morgan* 122 S. Ct. at 2067). "When a continuing violation is found, a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the [ ] discriminatory policy or practice, including those that would otherwise be time barred." *Sharpe*, 319 F.3d at 267 (internal citations and quotation marks omitted).

Preliminarily, the Court rejects Plaintiff's blanket attempt to bootstrap the privacy (Counts VI & IX) and IIED claims (Count VIII) into an overarching conspiracy theory with readmission rejection as the culminating act. *See* DE 12 at 16. Huang did not plead a collusive agreement (by or between any Defendants) to this effect. Moreover, all three

---

[16] The Court notes, but does not rely on as a basis for decision, Plaintiff's apparent sole reliance on the now-defunct serial violation theory. *See* DE 12 at 12. "The Sixth Circuit [ ] previously recognized two distinct categories of continuing violations, namely, those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination." *Sharpe*, 319 F.3d at 266. However, the Circuit, relying on *National Railroad Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2070 (2002), has since rejected the viability of a serial violation theory, *i.e.*, the continuing violations doctrine cannot be invoked to recover for "discrete acts of discrimination . . . occurring outside the filing period." *Taylor v. Donahoe*, 452 F. App'x 614, 619 (6th Cir. 2011)

Counts are based on a single discrete event (in 2011). *See* DE 6 at ¶¶ 15–17; *Slorp*, 587 F. App'x at 258 ("Liability attaches to a discrete act as soon as that act occurs[.]"). The Complaint does not connect this event to either pleaded conspiracy theory (RICO or § 1985)—not as contributing conduct or as a predicate violation. Instead, Huang explicitly ties Defendant Dunatov's alleged disclosures to Kentucky privacy and outrage claims. Stated otherwise, Plaintiff's own allegations do not support and, in fact, refute any contention that the privacy and IIED claims are "part of the ongoing conspiracy which he has alleged." DE 12 at 16.

Applying the continuing violations analysis to the civil rights claims (Counts I, II, X, and XII) presents a (slightly) closer call. The Court assumes, for argument's sake, that the pleaded facts support a potential inference of class-based discrimination toward those of "East Asian ethnicity[.]" *See* DE 6 at ¶¶ 21, 28, 29, 37–38, 50–55. The civil rights claims, nonetheless, remain time-barred because Plaintiff failed to allege an act contributing to the claim within the timely filing period. *See Taylor*, 452 F. App'x at 619. The Court has fully reviewed the letter that Plaintiff relies on for the alleged anchoring act. *See* DE 16-2. The Court finds (and Plaintiff claims) no plausible basis to construe the Defendant University's letter submission, through counsel—and responding to *Plaintiff's* previously lodged CPE complaint—as an unlawful act of any kind. Continuing violations tolling, again, requires "continual unlawful acts, not continual ill effects from an original violation." *Tolbert*, 172 F.3d at 940.

Plaintiff contends the letter constituted the "University's final rejection of his attempts" to regain admission by complying with certain conditions. DE 12 at 12. Nothing in the Complaint, however, suggests that Defendants reneged on (or presented)

readmission guarantees after Plaintiff satisfied offered terms. At best, the pleadings, though thinly, support an inference that the parties' four-years of "discussions" included possible resolution proposals. Despite Huang's current claims, the pleadings offer no indication of an illusory readmission promise.[17]

The Court, stretching the Plaintiff-favorable inference requirement to its limits, views the Complaint as supporting failed discussions culminating in the University refusing to readmit Plaintiff. "At most, th[is] alleged act[ ] constitute[d] continual ill effects from the" 2014 forced withdrawal. *Mitchell v. Taylor*, No. 16-6335, 2018 WL 4162255, at *3 (6th Cir. Apr. 16, 2018), *cert. petition filed*, ___ U.S. ___, 18-5886 (Sep. 7, 2018). Stated otherwise, the University's "opposition to [Huang's CPE complaint] is not independently actionable because it merely gave 'present effect' to [allegedly illicit] conduct that had occurred outside the limitations window." *Slorp*, 587 F. App'x at 259.

"Merely waving the wand of 'continuing violation' is not enough to weave distinct and separate acts into a continuous narrative which eschews a one-year deadline." *See Bullock v. City of Covington*, No. CV 16-56-HRW, 2016 WL 6694486, at *4 (E.D. Ky. Nov. 14, 2016), *aff'd*, 698 F. App'x 305 (6th Cir. 2017). Because Huang fails to

---

[17] Further, the pleadings contradict Plaintiff's (un-pleaded) claim that the letter was the first time the University notified him of a final readmission rejection. Huang resorted to legal action in July 2016—as reflected in the Complaint text, *see* DE 6 at ¶ 58 (characterizing the letter as a "Response"), and the Complaint-incorporated letter. The CPE filing leaves no room for a plausible inference that Huang was unaware of his ultimate admittance fate before the University's response. Certainly, Plaintiff is entitled to reasonable inferences in his favor. However, the Court views the theory that Huang somehow bore hope for readmission to an institution two-years after he was forced to withdraw and while he was concurrently lodging misconduct allegations with state authorities as relying entirely on "unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (noting absence of obligation for courts to accept such unjustified inferences); *see also Iqbal*, 129 S. Ct. at 1949 ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.").

plausibly allege any unlawful act within the filing period, the continuing violations doctrine cannot save the untimely claims. *See id.* ("The continuing violation doctrine is strictly construed and rarely applied in the Sixth Circuit.")

### b. Equitable Tolling / Estoppel

Plaintiff contends that the University's representations to his counsel regarding readmission effectively induced Plaintiff to delay filing until the relevant limitations periods expired. Thus, per Plaintiff, Defendants are equitably estopped from reliance on limitations defenses and, alternatively, equitable tolling applies. The Court disagrees.

"In determining whether equitable tolling is appropriate, [the Sixth Circuit has] consistently considered the following factors: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Taylor*, 452 F. App'x at 618 (internal citations omitted). Plaintiff claims no absence of actual or constructive notice regarding the relevant filing deadlines. Nor does Huang allege that he diligently pursued his rights or that Defendants would not be prejudiced.

The Sixth Circuit directs federal courts to "sparingly bestow equitable tolling," and follows the general rule that "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond [his] control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000) (internal citations omitted). Here, the Court sees no compelling reason to toll the at-issue limitations periods. *See id.* ("Absent compelling equitable considerations, a court should not extend limitations by even a single day."). Huang,

represented by counsel **since 2012**, attempted to negotiate his readmission to a school that he claims discriminated against him over several years. When those efforts bore no fruit, Plaintiff pursued legal action through a state agency. The pleadings offer no reasonable basis to believe Plaintiff, or his counsel, was misled about (or ignorant of) the existence of the statutes of limitations or the consequences of allowing lapse sans filing.

"Similarly, equitable estoppel is invoked when a defendant takes steps to prevent the plaintiff from timely filing her claims. . . . Application of equitable estoppel is premised on misconduct by the defendant, as well as the plaintiff's actual and reasonable reliance on that misconduct." *Taylor*, 452 F. App'x at 618 (internal citations omitted). The doctrine "is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) (internal citations omitted). To invoke equitable estoppel, a plaintiff must "demonstrate that his ignorance is not attributable to a lack of diligence on his part." *Id.*

Even if the Court accepted as true Plaintiff's un-pleaded, fanciful allegation that Defendants initiated readmission discussions to induce Plaintiff to delay filing, that would not warrant estoppel application here. Huang does not claim that Defendants made any representations regarding the statutes of limitations. "[P]laintiff does not suggest how this [conduct] prevented [him] from suspecting that the alleged" misconduct was discriminatory or otherwise discovering his claims. *Taylor*, 452 F. App'x at 618. The alleged false readmission assurances were "not vital to the existence of [P]laintiff's claim[s.]" *Id.* at 619.

Critically, Plaintiff does not claim that the alleged guarantees *prevented* timely filing. Plaintiff was free to choose whether to file suit or pursue out-of-court resolution or, as is typical, both. Indeed, the Complaint allegations, and incorporated documents, surely indicate that Plaintiff did not rely[18] on any readmission promise after July 2016—when Plaintiff filed the CPE complaint.[19] At bottom, Plaintiff's allegations permit no inference that his failure to timely file was attributable to anything other than "a lack of diligence on his part[.]". *Bridgeport*, 371 F.3d at 891 (internal citation omitted). Accordingly, equitable estoppel does not apply.

### 4. Sub-Conclusion

Plaintiff's IIED, privacy, and civil rights claims[20] are untimely under the applicable statutes of limitations. The efforts to circumvent the time bar through

---

[18] The Court also notes a lack of pleaded support for the reasonableness of Plaintiff's reliance. Indeed, Plaintiff's claims suggest that by 2014, the med-school Dean not only forced Huang to withdraw, but also advised Plaintiff the Dean would not recommend him to another school.

[19] Kentucky law likewise requires reliance for estoppel application. *See Gailor v. Alsabi*, 990 S.W.2d 597, 604 (Ky. 1999) ("In order to prevail on a theory of estoppel, there must be proof not only of an intent to induce inaction on the party to be estopped, but also of reasonable reliance by the party claiming the estoppel." (citing *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky.1952)). No assertions suggest reliance.

[20] Plaintiff's time-barred § 1983 claims also lack a critical allegation. Namely, Huang entirely fails to allege that constitutional deprivations were "committed by a person acting under color of state law." *Toth v. City of Toledo*, 480 F. App'x 827, 831 (6th Cir. 2012) (citations omitted). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 102 S. Ct. 2764, 2770 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 102 S. Ct. 2744, 2754 (1982)).

A concededly private defendant, as here, can only "be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). The Sixth Circuit applies three tests to determine *Lugar*'s fair attribution requirement. *See id.* at 828–30 ("The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state[.]"); *id.* at 829 ("The state compulsion

continuing violation and equitable doctrines are unavailing. Huang, having previously retained counsel, chose to pursue resolution of his dispute outside the courthouse. His recent change in tack, after those efforts failed, came too late. Accordingly, the Court dismisses the tardy claims.[21]

### B. No Private Cause of Action

#### 1. Mail Fraud & Wire Fraud

The University Defendants correctly point out that neither the federal mail or wire fraud statute is enforceable via a private cause of action. Plaintiff does not dispute Defendants' contention, but now insists that he intended only to plead a RICO conspiracy claim, pursuant to 18 U.S.C. § 1961. Huang argues the fraud claims only as RICO predicate offenses. Accordingly, the Court dismisses Counts III and IV to the extent they suggest independent mail and wire fraud claims.

---

test requires that a state exercise such coercive power or provide such significant encouragement" that the private actor's choice "is deemed to be that of the state."); *id.* at 830 (The nexus test requires a "sufficiently close nexus between the state and the challenged action . . . so that the" regulated entity's action "may be fairly treated as" state action.). This District, in other circumstances, has found the Defendant University's actions not fairly attributable to the state. *See generally Raithatha v. Univ. of Pikeville*, No. 7:16-CV-251-EBA, 2017 WL 4583245, at *8 (E.D. Ky. Oct. 13, 2017). More importantly, Plaintiff does not allege that any Defendant acted under color of state law nor any facts that permit an inference that the private institution's conduct was "fairly attributable" to the state under any of the outlined tests. Plaintiff's failure to plead one of "the two essential elements to a § 1983 action" also justifies dismissal of Counts I & XII. *Parratt v. Taylor*, 101 S. Ct. 1908, 1913 (1981), *overruled on other grounds by Daniels v. Williams*, 106 S. Ct. 662, 664 (1986).

[21] In addition to the time-bar explained above, Plaintiff's Title VI claim (Count X) fails to state a claim against any individual Defendants. Title VI prohibits discrimination by "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The University is the only "entity allegedly receiving the financial assistance." *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996). Thus, Plaintiff cannot plausibly allege Title VI claims against the individual Defendants. *See Smith v. Spalding Univ.*, No. 3:15-CV-00595-GNS, 2016 WL 3748522, at *2 (W.D. Ky. July 8, 2016) ("The Sixth Circuit has held that individual defendants cannot be sued under Title VI." (citing *Buchanan*, 99 F.3d at 1356)).

### 2. FERPA

Count VII alleges a FERPA violation pursuant to 20 U.S.C. § 1232g. DE 6 at ¶¶ 79–81. FERPA, however, does not authorize a private cause of action. *Gonzaga Univ. v. Doe*, 122 S. Ct. 2268, 2277 (2002) ("[T]here is no question that FERPA's nondisclosure provisions fail to confer enforceable rights."). Thus, Count VII fails to state a claim, and the Court dismisses it pursuant to Rule 12(b)(6).

### 3. Kentucky Constitution

In addition to asserting the Fourteenth Amendment to the United States Constitution, Plaintiff's Count XII seeks compensation for due process violations under "Articles 2 and 3 of the Kentucky Constitution." DE 6 at ¶ 93. Neither Kentucky statutory or common law permits a private cause of action for state constitutional violations. *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536 (Ky. 2011) ("[W]e hold that KRS 446.070 does not create a private right of action for violations of the state constitution because our constitution is not a statute."); *id.* at 537 (declining to "create a new tort cause of action in Kentucky to provide money damages for constitutional violations"). Accordingly, the Court dismisses the state law portion of Count XII for failure to state a claim.

### C. RICO

Plaintiff alleges a RICO conspiracy, per 18 U.S.C. § 1962(d), based on alleged mail and wire fraud predicates. However, the Complaint alleges no actionable fraudulent scheme, claims no agreement, and identifies no RICO-compensable property damage. Because Huang fails to plausibly allege a single RICO predicate offense—much less a racketeering-activity pattern or related conspiracy—Count V fails.

Section 1962(d) bars conspiracies to violate the § 1962(a-c) substantive prohibitions. Presumably, though Huang does not identify a particular subsection, Plaintiff relies on § 1962(c) as the basis for his conspiracy allegation.[22] *See* DE 6 at ¶ 72. A § 1962(c) violation has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 105 S. Ct. 3275, 3285 (1985). A "pattern of racketeering activity" is a "series of related predicates that together demonstrate the existence or threat of continued criminal activity." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096–97 (2016). "[R]acketeering activity" includes, in relevant part, "any act which is indictable under" the mail or wire fraud statutes. 18 U.S.C. § 1961(1)(B). A RICO "pattern" must include "at least two" predicate offenses within a ten-year period. 18 U.S.C. § 1961(5).

RICO's civil remedies provision, 18 U.S.C. § 1964, "provides a private right of action for treble damages to any person injured in his business or property by . . . a pattern of acts indictable as mail [or wire] fraud." *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2138 (2008). In turn, mail and wire fraud consist of:

> (1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006); *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir.2003). "A scheme to defraud is any plan or course of action by which someone

---

[22] Plaintiff's allegations simply do not rationally fit into either of the other § 1962 prohibitions. *See Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1995 (2006) (Section 1962(a) "makes it unlawful for any person who has received income derived from a pattern of racketeering activity 'to use or invest' that income 'in acquisition of any interest in, or the establishment or operation of,' an enterprise engaged in or affecting interstate or foreign commerce."); *H.J. Inc. v. Nw. Bell Tel. Co.*, 109 S. Ct. 2893, 2897 (1989) (Section 1962(b) "renders . . . civilly liable 'any person' . . . who acquires or maintains an interest in or control of [an enterprise engaged in interstate commerce] 'through a pattern of racketeering activity.'").

intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010) (internal quotation marks and alterations omitted).

*Slorp*, 587 F. App'x at 264–65. For a proper conspiracy allegation, Plaintiff needed to allege that the conspirators agreed to "to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]" *Salinas v. United States*, 118 S. Ct. 469, 477 (1997).

Additionally, for the alleged predicate violations, Huang had to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). To satisfy the heightened Rule 9(b) pleading standard, Plaintiff needed to specify the "time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Wall v. Rental*, No. 15-13254, 2016 WL 3418539, at *4 (E.D. Mich. June 22, 2016), *aff'd sub nom. Wall v. Michigan Rental*, 852 F.3d 492 (6th Cir. 2017) (hereinafter *Wall II*); *accord Wall II*, 852 F.3d at 496.

Plaintiff's RICO claim is fatally deficient in multiple respects. For starters, the Complaint does not particularly allege any events that could qualify as predicate fraud offenses. Plaintiff's only specific fraud allegations, DE 6 at ¶¶ 66 & 69, are entirely conclusory and do not identify any particular misrepresentation. The balance of the Complaint contains two allegations that, in the Court's view, arguably identify misrepresentations. *See id.* at ¶¶ 18, 33. Yet, **no** allegation plausibly claims conduct indictable as mail or wire fraud.

First, the 2012 allegation—regarding Defendant Laurich's purported false accusation that Plaintiff was sleeping in class—does not involve the use of mails or

interstate wire communications. *See id.* ¶ 18 ("in the presence of other students"). Second, the November 2013 claim—regarding the Student Ethics Council's misquotation of Plaintiff's Facebook post—is not attributed to any alleged co-conspirator or named Defendant. *Compare id.* at ¶¶ 6–12 (naming Defendants), *with* ¶ 27 (identifying "R. Jackie Do" as "president of the aforementioned Student Ethics Council"), *and* DE 6-3 (naming, in document containing alleged misrepresentation, Ryan Johnson and Tyler Scott McMurry as "SEC Representative Counselor[s]"). Further, Huang wholly fails to tie either misstatement to any actionable scheme under the mail- or wire-fraud rubrics— *i.e.*, a "plan or course of action by which someone intends to deprive another . . . of money or property by means of false or fraudulent pretenses, representations, or promises." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (internal quotation marks omitted); *see also Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees & Rest. Employees Union, AFL-CIO*, 215 F.3d 923, 927 (9th Cir. 2000) ("The purpose of the mail fraud and wire fraud proscriptions is to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings."). In short, Plaintiff did not particularly plead a single plausible fraud claim, much less an actionable RICO "pattern."

Plaintiff's failure to state a § 1962(c) claim necessarily dooms the conspiracy count. *See* 18 U.S.C. 1962(d); *see also Beck v. Prupis*, 120 S. Ct. 1608, 1616 (2000) ("[I]njury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)."). Moreover, Plaintiff "pleaded the conclusory allegation that the [D]efendants 'conspired,'" without pleading "the elements of a conspiracy." *Craighead v.*

*E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990).[23] Huang's failure to plead any agreement between any Defendants to engage in RICO-violative conduct is also fatal. *See Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 890 n.10 (6th Cir. 2000) ("The plaintiff's cryptic conspiracy allegation . . . omitted essential allegations detailing an agreement to jointly undertake specific actions illegalized by RICO."). Additionally, Huang does not claim a loss of property proximately caused by any alleged fraud, as § 1964(c) requires. *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2141 (2008) ("§ 1964(c) likewise requires the plaintiff to establish proximate cause in order to show injury 'by reason of' a RICO violation.").

In sum, Huang did not adequately plead a RICO predicate, a § 1962(c) violation, a § 1962(d) conspiracy, or a § 1964(c)-compensable injury. Count V falls well short of clearing the Rule 9(b) or 12(b)(6) hurdles and, thus, the Court dismisses the claim.

## IV.    AMENDMENT REQUEST

Plaintiff, in his Response, requests leave to file an amended complaint if the Court grants Defendants' motions. The Court, for now, rejects the request. Because no motion pends, Defendants have not had a formal opportunity to respond to the request. Further, Plaintiff does not identify the nature of any proposed amendments. Thus, the Court is unable to analyze the motion under the applicable standards. *See, e.g.*, Fed. R. Civ. P. 15(a)(2) (providing that a party may amend its pleadings with the court's leave, which "[t]he court should freely give . . . when justice so requires."); *Foman v. Davis*, 83 S. Ct. 227, 230 (1962) (Courts may deny amendment for a variety of reasons—"such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

---

[23] This same deficiency applies as an alternative dismissal basis for Plaintiff's § 1985 conspiracy claim.

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."). The record, at this point, does not allow the Court to reach a reasoned decision on Plaintiff's non-specific amendment request—which is not, in its current form, a motion properly before the Court. The Court notes, however, the Sixth Circuit's instruction that a timely request to amend, in response to potential dismissal, is a factor relevant to denying or freely granting amendment. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551–52 (6th Cir. 2008). Further, Plaintiff already amended once. Thus, although the Court denies the request for now, Plaintiff has leave to file a properly supported amendment motion, compliant with any scheduling order.[24]

## V.   CONCLUSION

For all these reasons the Court **ORDERS** as follows:

1. The Court **GRANTS** DE 8 and **DISMISSES** all claims against the Defendant Presbyterian Church (U.S.A.), A Corporation, **WITHOUT PREJUDICE**;

2. The Court **GRANTS** DE 10 (consistent with the above rulings) and dismisses Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XII of the Amended Complaint (DE 6), as asserted against the University Defendants, **WITHOUT PREJUDICE**; and

3. The Court will issue a 26(f) meeting Order.

This the 11th day of October, 2018.

---

[24] A motion should include a proposed amended complaint. *See* LR 7.1 ("[A] motion must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it.").



Signed By:

_**Robert E. Wier**_

**United States District Judge**