UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JEFF HUANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 7:18-CV-11-REW |
| v. ) | |
| ) | OPINION & ORDER |
| UNIVERSITY OF PIKEVILLE, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, following two rounds of dispositive motion briefing, winnowed Plaintiff Jeff Huang's original 13 causes of action down to a breach of contract claim against his former school, the University of Pikeville. *See* DE 28 (Op. & Order granting Rule 12(b)(6) motion); DE 75 (Op. & Order granting Rule 12(c) motion); *see also* DE 59 (Op. & Order denying Huang's Motion to Alter, Amend, or Vacate DE 28). On August 1, 2019, the University moved for Rule 56 relief on that claim. *See* DE 69. The Court, after more than 100 days with no Huang response, assessed the substance, granted the motion, and entered final Judgment against Huang. *See* DE 76 (Op. & Order) & DE 77 (Judgment). Huang now moves for Rule 59(e) relief from the Court's summary judgment ruling. DE 79.[1]

"Under Rule 59, a court may alter the judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*,

---

[1] Huang does not challenge the aspects of the Judgment that effectuate the Court's prior Rule 12 dispositive rulings.

1

616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson,* 428 F.3d 605, 620 (6th Cir. 2005)). Though Huang does not explicitly peg his argument to any of these particular avenues, he appears to argue clear legal error. *See* DE 79 at 2 ("[T]he Court has misapprehended his arguments and has overlooked pertinent facts.").

Huang categorizes his four arguments as follows: (1) "Summary Judgment is not favored"; (2) "The Court's Order has a dearth of authority"; (3) "Counsel failed to receive service of Defendant's Motion"; and (4) "The Court has misread the applicable contract." DE 79 at 2, 4, 6 & 7. Defendant responded. DE 81. Huang replied. DE 82. The motion stands ripe for review. For the following reasons, the Court sees no basis to disturb its prior ruling and denies Huang's motion.

*First*—Huang's initial thrust amounts to a recitation of summary judgment (and other) caselaw plus the following conclusory assertion:

> Applying the foregoing principles to the facts of the case at bar, it is clear that the Defendant has not sustained his burden of persuasion, and the Court's Order of Dismissal was improperly granted.

DE 79 at 2–4. This argument warrants little discussion and no relief. Huang does not allege that his recital of the Rule 56 standard materially differs from the Court's Opinion. *See* DE 76 at 4–6 (describing the applicable standard); *id.* at 6–7 ("Failure to respond is not alone grounds for the Court to grant Defendant's dispositive motion."). Moreover, Huang does not grapple with any discrete aspect of the Court's application of those standards to the facts of his case. Huang's bare assertion of error falls well short of showing an entitlement to Rule 59 relief.

2

*Second*—Huang next reasserts his "apparent belief that district courts must granularly support each aspect of their decisions with citations to directly controlling caselaw." DE 59 at 3. This argument fares no better than the prior, rejected iteration:

> Plaintiff's tack here is unique and, frankly, absurd. Most of Huang's argument is directed to proving that the Court cited cases that it was not institutionally **bound** to follow. At the same time, Plaintiff acknowledges the obvious counterpoint that non-controlling precedent's "reasoning may be 'instructive' or helpful." [DE 79 at 5.] . . . Huang, with minimal exceptions, does not cite to contrary precedent of any kind—much less binding authority. Thus, Huang mostly fails to dispute the legal rationale undergirding the Court's rulings. Most importantly, Huang wholly fails to explain why citation to non-binding precedent amounts to "a clear error of law[.]" *Leisure Caviar, LLC*, 616 F.3d at 615. Accordingly . . . , the Court rejects most of Huang's contentions summarily. *See, e.g.*, *Simmons v. Kapture*, 516 F.3d 450, 456 (6th Cir. 2008) (relying, in part, on prior ruling, though "non-binding for present purposes" as "reinforc[ing] the logic of" holding); *United States v. Green*, 554 F. App'x 491, 496 n.1 (6th Cir. 2014) ("Green also takes issue with the lower court's reliance on *United States v. Micou*, 48 F.3d 1220 (6th Cir. 1995) . . . because it is an unpublished case and thus is non-binding. This does not take away from its factual similarity or its persuasive authority on the vitality of probable cause despite changes in circumstance.").

*Id.* at 4. Plaintiff warrants no relief on this theory.

*Third*—The record belies Huang's claim that he "failed to receive any notice of the Defendant's" Rule 56 motion until he received the Court's Opinion & Order granting same. DE 79 at 6. Initially, Huang's contention that the University was obligated, under Kentucky mechanics, to send the Rule 56 motion "to Plaintiff's counsel via certified mail, return receipt requested at the address he himself provided" is, in case context and for multiple reasons, flatly wrong. DE 79 at 6–7 (internal citation and quotation marks omitted). "[F]ederal courts sitting in diversity . . . are to apply state substantive law and **federal procedural law**[.]" *Hanna v. Plumer*, 85 S. Ct. 1136, 1141 (1965) (emphasis added); *see also* DE 59 at 3 n.4 (noting this bedrock principle).

3

Federal Rule 5 governs service of a "written motion[.]" Fed. R. Civ. P. 5(a)(1)(D). Rule 5 requires service on counsel for represented parties and authorizes certain mechanics including "mailing . . . to the person's last known address—in which event service is complete upon mailing[.]" Fed. R. Civ. P. 5(b)(1) & (2)(C).[2] The record substantiates service on Plaintiff's counsel on August 1, 2019. *See* DE 45 (Pl.'s counsel Notice of Address Change to "202 Pheasant Drive, Apartment 101, Fairdale, Kentucky 40118"); DE 69 at 32 (certifying service to Pl.'s counsel at the Pheasant Drive address); DE 81-1 (Def.'s intraoffice communication confirming mailing). Plaintiff's service argument is meritless.

Moreover, Plaintiff received notice of the pending filing on at least three occasions: (1) The Court's August 23, 2019, Order (DE 71) setting aside the case schedule noted "the pending dispositive motions (DE 55 & DE 69)"; DE 69 is the subject Rule 56 motion. (2) Defense counsel served—via certified mail, return receipt requested—a letter on Plaintiff's counsel stating: "On August 1, 2019, the University . . . filed and served a motion for summary judgment" (DE 81-2 at 2); a recipient of same, at 202 Pheasant Ave., signed the return on October 2, 2019. *See* DE 81-2 at 5. (3) Counsel for both parties participated in an October 2, 2019, teleconference with Judge Ingram (DE 74); during the call, defense counsel explicitly stated: "The University . . . filed and served a motion for summary judgment . . . on August 1[.]" *See* Audio File KYED-LON_Pike 7-18-CV-11-REWHAI_20191002_105946, at 01:30–01:38. In short,

---

[2] *See also* CR 5.02(1) (authorizing materially identical mechanics).

Plaintiff's current claim that he lacked notice of the dispositive motion's pendency is utterly baseless as a matter of fact.[3]

*Fourth*—Per Plaintiff, the "thrust of" his "contract argument" is that:

> [T]he 2010 Catalog, in force at the time he enrolled at the University, required that his dismissal be instituted by the University, and that the University breached this obligation by authorizing the Student Ethics Committee (hereafter referred to as "SEC"), which had been established subsequent to his enrollment, to institute proceedings for his dismissal.

DE 79 at 7. The Court previously rejected a version of this theory (per Plaintiff, an accurate summary of his claim, *see id.*) based on, *inter alia*, the University's explicit reservation of "the right to amend existing policies or establish new policies at any time without prior notice." DE 76 at 17. Plaintiff now argues that the subject language renders the Catalog an unconscionable, and thus unenforceable, contract of adhesion. This theory fails for multiple reasons.

Huang, given ample notice, could have argued (but did not allege) unconscionability prior to Judgment. Rule 59(e) is "an improper vehicle for raising new arguments[.]" *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 842 (6th Cir. 2018); *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir.

---

[3] Confronted with Defendant's response identifying various modes of actual notice, Plaintiff, in reply, abandons reliance on any service or notice theory. *See* DE 82. The Court previously warned Plaintiff's counsel that he stepped "very close to the line between zealous advocacy and contumacious conduct" with certain representations in the prior motion to alter or amend. DE 59 at 4 n.5. The Court further highlighted counsel's duty of candor. *See id.* (quoting SCR 3.130(3.3) ("A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal[.]"); *Thompson v. Paasche*, 950 F.2d 306, 315 (6th Cir. 1991) ("Lawyers also have, however, a duty of candor to the court. The job of a lawyer is to present the law in the light most favorable to the client, but not to misrepresent the law when it clearly goes against the client."). Then-Chief Judge Caldwell and Judge Atkins have thrice ordered Plaintiff's counsel to show cause for various issues. *See* DE 41; DE 44; DE 63. Counsel's current representations regarding notice continue a pattern of conduct that is, to say the least, concerning.

5

2007) ("[U]nder Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued."). Thus, the argument is waived, and the Court rejects it initially on that basis.

The merits, too, warrant denial. For starters, such language is precisely why courts have been reluctant to deem similar documents binding contracts. *Cf., e.g.*, *Green v. Sandy*, No. 5:10-CV-367-JMH, 2011 WL 4688639, at *4 (E.D. Ky. Oct. 3, 2011) ("[T]he Court is not immediately persuaded that the handbook could ever be understood as a contract. It is a unilateral policy manual which states that EKU 'reserves the right to alter, amend or modify this handbook at any time without prior notice.' As with handbooks in the employment context, 'in order to constitute a contract, . . . the handbook must contain specific language showing EKU's intent to be bound by the handbook's provisions.'" (citations omitted)); *Fleming v. U.S. F.B.I. Detroit MI Field Office*, No. 09-13449, 2010 WL 431725, at *3 (E.D. Mich. Feb. 2, 2010) (holding a community college's "mission statement is not a binding contract"). If there was no contract, Huang obviously has no contract claim.

Plaintiff seeks to capitalize on assumptions the Court adopted based on Huang's initial non-response, but fails to confront, for instance, "Defendant's persuasive argument as to the absence of any binding contract[.]" DE 76 at 7 n.7; *see id.* (assuming "for argument's sake . . . that *some* provisions of the relevant documents include provisions

that bound the University.").[4] Huang offers no compelling theory for why the Catalog should be deemed an enforceable contract absent the provision permitting modification. This is particularly damning given the baseline principles that undergird Kentucky claims against educational institutions:

> ["]Courts are generally hesitant to intervene in the affairs of academic institutions." [*Suhail v. Univ. of the Cumberlands*, 107 F. Supp. 3d 748, 755 (E.D. Ky. 2015)]. This is "especially" true "in actions challenging the institution's academic regulations, since the courts possess minimum expertise in this area." *Lexington Theological Seminary, Inc. v. Vance*, 596 S.W.2d 11, 14 (Ky. Ct. App. 1979).

DE 76 at 10.

The *Wilder* Court (cited by Huang) describes Kentucky's unconscionability doctrine:

> A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. The doctrine of unconscionability has developed as a narrow exception to this fundamental rule. The doctrine is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain.
>
> An unconscionable contract has been characterized as one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other. Unconscionability determinations being inherently fact-sensitive, courts must address such claims on a case-by-case basis.

---

[4] Plaintiff's counsel laughably complains that he "has not yet received a copy of the [ ] Motion, and has found it necessary to prepare the instant Motion solely by referring to the Court's Order, without any opportunity to review the Defendant's Motion[.]" DE 79 at 6. Even if counsel, in fact, did not receive the Rule 56 motion when it was properly served, his current claim regarding lack of "opportunity to review" the filing is absurd. Defendant's motion is a public filing, and Plaintiff's counsel, acting diligently, could have (and given the nature of the relief sought, should have) secured a copy through the Clerk's office. It, like all public court papers, is open to all.

*Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (footnotes, citations, and quotation marks omitted); *see also id.* at 342 n.20 ("Adhesion contracts are not *per se* improper."). Though the "relationship between a private college and its students can be characterized as contractual in nature[,]" "Kentucky courts [historical] reluctan[ce] to restrain the rights of private colleges to discipline, regulate, or impose restrictions upon their students" remains a persisting factor. *Centre College*, 127 S.W.3d at 567–68. Thus, "students who are disciplined are entitled only to those procedural safeguards which the school specifically agrees to provide." *Id.* at 568.

The University did not "specifically agree" that the Catalog's mechanics for misconduct-complaint handling were evergreen. Rather:

> The Catalog provides that [Student Policies] are (A) described in greater detail in the Student Handbook, (B) that the Handbook is "published annually[,]" and (C) that the University "reserves the right to amend existing policies or to establish new policies at any time without prior notice." *See* [DE 69-37] at 28–29.

DE 76 at 16; *see also* DE 59-5 ('10 Handbook) at 23 ("It is understood that these policies may not cover every situation."). Plaintiff essentially asks the Court to find the University bound to follow, for Huang's full KYCOM tenure, the academic regulations in force when Plaintiff matriculated, while deeming unenforceable provisions that represent a clear expression of institutional need for flexibility in these areas. The Court, on this record, rejects the invitation.

Huang, though citing numerous (notably, given Plaintiff's repeated tirades against same, mostly non-binding) cases on unconscionability, offers little in the way of specific argument as to unconscionability of the verbiage actually challenged. For instance, he does not categorize his claim as concerning substantive or procedural unconscionability.

8

*See Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) ("Unconscionability may be procedural or substantive."). Plaintiff's factual argument is limited to a single paragraph relying wholly on the theory that Huang and the University possessed unequal bargaining power. Yet, the Commonwealth's Supreme Court has rejected the idea that unconscionability is a tool for alleviating "the consequences *per se* of uneven bargaining power[.]" *Id.* (citation omitted).

Huang's unconscionability argument contends little with the substance of the unconscionability doctrine and offers no compelling argument for its application to the instant facts. Thus, Plaintiff shows no error in the prior ruling's failure to find the University's reservation of modification authority unconscionable (again, an argument presented for the first time in the Rule 59 context).

Moreover, even if the Court found the discrete provision unconscionable and excisable, Huang would get no Rule 59 relief. As the Court previously noted:

> [T]he disciplinary acts that form the basis for many of Huang's breach allegations were based on signed Huang admissions of misconduct. *See* DE 69-22 & 23 (Signed Counseling Forms); Huang Dep. at 74–76 (Huang confirming signature and agreeing that it is "unprofessional to be late to class"); *id.* at 85 (confirming signature). Though Huang, at deposition, disputed the voluntariness of one such signature, *id.* at 85, Plaintiff, by failing to respond here, waived any argument as to the Court's consideration of these signed concessions. *See* [*Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008)]; *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion[.]"). "A contract between an educational institution and a student is only enforceable so long as the student complies with the college's rules and regulations." *See* [*Centre College v. Trzop*, 127 S.W.3d 562, 568 (Ky. 2003)]. Thus, Huang, having admittedly breached KYCOM rules, could not now enforce contractual rights regarding the process of discipline for such violations.

DE 76 at 15 n.8. Were this not enough, Plaintiff, by pledging to adhere to the KYCOM Student Honor Code (including its SEC complaint-referral mechanics), ratified the University's establishment of the SEC. *See* DE 69-21 at 13 (Huang Signed Honor Code); *cf.* KRS 371.010 (permitting "ratification" via "writing [ ] signed by the party to be charged therewith").

Finally, Plaintiff's breach theory is factually baseless. Huang, at his deposition, denied that he was dismissed as a result of his SEC interactions. *See* Huang Dep. at 76–77, 87–88. Indeed, Huang explicitly conceded that he was dismissed for "continuing academic issues[.]" *Id.* at 88. Thus, in Plaintiff's own words, the University did not authorize the SEC to "institute proceedings for [Huang's] dismissal." DE 79 at 7.[5]

For all of these cascading reasons, the Court **DENIES** DE 79.

This the 21st day of January, 2020.

Signed By:
*Robert E. Wier* REW
United States District Judge

---

[5] The Court does not substantively rule on Plaintiff's argument, raised for the first time in reply, that Huang's statements on this topic are inadmissible testimony "concerning questions of law[.]" DE 82 at 3–4; *see Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court[.]"). However, the Court notes the lack of a contemporaneous objection at the subject deposition. Further, Huang's view as to what proceeding actually led to his dismissal is surely a factual observation.